IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| COURTNEY SCHWARTZ, DOUGLAS SCHWARTZ, C.D.S., A MINOR, | § § § § § § § § § § § § § § § § | |
| *Plaintiffs*, | | |
| v. | | CIVIL ACTION NO. 2:23-CV-00528-JRG |
| UNITED STATES OF AMERICA, LONGVIEW MEDICAL CENTER, L.P. D/B/A LONGVIEW REGIONAL MEDICAL CENTER, | | |
| *Defendants*. | | |

**MEMORANDUM OPINION AND ORDER**

### I.    INTRODUCTION

Before the Court is the Motion to Transfer Venue (the "Motion") filed by Defendant the United States of America (for purposes of this Motion, "Defendant"). (Dkt. No. 9). Having considered the Motion and the related briefing, the Court finds that it should be and hereby is **DENIED**.

### II.   BACKGROUND

Plaintiffs Courtney Schwartz and Douglas Schwartz, individually and as next friends of C.D.S., a Minor, (collectively, "Plaintiffs") filed this lawsuit against Defendants the United States of America and Longview Medical Center, L.P. d/b/a Longview Regional Medical Center (collectively, "Defendants") on November 17, 2023, accusing Defendants of medical negligence resulting in severe and permanent injuries to C.D.S. shortly before and during his birth. (Dkt. No.

1). On February 5, 2024, Defendant filed the present Motion, in which it requests intra-district transfer to the Tyler Division on the basis of convenience under 28 U.S.C. § 1404(a). (Dkt. No. 9).

### III. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." 28 U.S.C. § 1404(a). The question of whether a suit "might have been brought" in the transferee forum encompasses subject matter jurisdiction, personal jurisdiction, and propriety of venue. *Viking Techs., LLC v. Assurant, Inc.*, No. 2:20-CV-00357-JRG, 2021 WL 3520756, at *1 (E.D. Tex. June 21, 2021) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960)). If this threshold burden is satisfied, the party seeking transfer must then establish that transfer is warranted in the interest of convenience.

In evaluating a motion to transfer pursuant to § 1404(a), the Court considers the Fifth Circuit's non-exhaustive list of private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*). The private interest factors include: (1) "the relative ease of access to sources of proof," (2) "the availability of compulsory process to secure the attendance of witnesses," (3) "the cost of attendance for willing witnesses," and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive." (*Id.*). The public interest factors include: (1) "the administrative difficulties flowing from court congestion," (2) "the local interest in having localized interests decided at home," (3) "the familiarity of the forum with the law that will govern the case," and (4) "the avoidance of unnecessary problems of conflict of laws of the application of foreign law." (*Id.*).

While a plaintiff's choice of venue is not an express factor in this analysis, the appropriate deference afforded to the plaintiff's choice is reflected in a defendant's elevated burden of proof.

2

*In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*Volkswagen II*). To support its claim for a transfer under § 1404(a), the defendant must demonstrate that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. (*Id.*). Absent such a showing, however, the plaintiff's choice is to be respected. (*Id.*). "When deciding a motion to transfer under § 1404(a), the Court may consider undisputed facts outside of the pleadings, such as affidavits or declarations, but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *Hammers v. Mayea-Chang*, No. 2:19-cv-181-JRG, 2019 WL 6728446, at *4 (E.D. Tex. Dec. 11, 2019) (collecting cases). District courts are entitled to "greater deference when considering § 1404(a) motions for intra-district change of venue as opposed to inter-district transfer." *See Smith v. Michels Corp.*, No. 2:13-CV-00185-JRG, 2013 WL 4811227, at *2 (E.D. Tex. Sept. 9, 2013) (analyzing authority on the issue).

## IV.   DISCUSSION

The threshold inquiry is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I*, 371 F.3d at 203. Plaintiffs do not dispute that the Complaint could have been filed in the Tyler Division. *See* (Dkt. No. 11). Accordingly, the Court finds that this threshold question is satisfied and turns next to the question of convenience.

### A. Undisputed Factors

The parties do not dispute that Factors 1 (relative ease of access to sources of proof), 2 (compulsory process to secure witness attendance), 7 (familiarity with the governing law), and 8 (avoidance of conflicts of law) are neutral. *See* (Dkt. No. 9 at 3); (Dkt. No. 11). The Court sees no reason to overturn the parties' agreement and accordingly considers these factors to be neutral. Neither party addresses the fourth private interest factor "all other practical problems that make

trial of a case easy, expeditious and inexpensive." As such, and without reason to conclude otherwise, the Court finds that this factor is also neutral in the transfer analysis. The Court considers the remaining three disputed factors in the order raised by the parties.

### B. The Local Interest in Having Localized Interests Decided at Home

Defendant argues that "the Tyler Division has a strong local interest in this matter because the events, parties, and witnesses are all part of the Tyler Division community." (Dkt. No. 9 at 3). Defendant contends that: (1) "all operative facts occurred in Gregg County, Texas, which falls within the Tyler Division," (2) "Plaintiffs also reside in Gregg County, within the Tyler Division," (3) "[t]he relevant witnesses, including LRMC employees and Wellness Pointe employees who provided care to Plaintiff Courtney Schwartz, are also located in Gregg County, Texas, which falls within the Tyler Division." (*Id.* at 4). Defendant concludes that "[t]hese facts give rise to the Tyler Division community's localized interest in this matter and having this matter decided by the members of the Tyler Division community." (*Id.*).

In response, Plaintiffs argue that this factor does not favor transfer because all of the relevant details for this case occurred in Longview, Texas, which, while in Gregg County and technically a part of the Tyler Division, is closer to the Marshall courthouse than the Tyler courthouse.[1] (Dkt. No. 11 at 6-9). Specifically, Plaintiffs notes that the "Wellness Pointe Longview/Pine Tree facility . . . is approximately 37 miles from the Tyler Division Courthouse," and "is closer to the Marshall Division Courthouse, as the distance between the two is approximately 27-31 miles (depending on the route taken)." (*Id.* at 7). Likewise, Plaintiffs note that Defendant Longview Regional Medical Center "is approximately 40 miles from the Tyler

---

[1] While the City of Longview is situated in both Gregg County (in the Tyler Division) and Harrison County (in the Marshall Division) Wellness Pointe and Longview Regional Medical Center are located within that part of the City of Longview which lies in Gregg County.

4

Division Courthouse and only approximately 23-28 miles . . . from the Marshall Division Courthouse." (*Id.*). Plaintiffs point to this Court's decision in [*Smith v. Michels Corporation*[2]] to argue that "the local interest factor revolves around the physical location where a claim arises instead of arbitrary divisional lines." (*Id.*).

In reply, Defendant reiterates that because Longview, Texas is in the Tyler Division, "the burden of jury duty rests with the community members of the Tyler Division, not the Marshall Division." (Dkt. No. 13 at 2).

In sur-reply, Plaintiffs first note that "Longview, Texas is located within both Harrison County, a county that falls within the Marshall Division, and Gregg County." (Dkt. No. 14 at 2). That fact, in Plaintiffs' view, paired with the fact that "Longview Regional is one of the largest employers in the City of Longview," means that "persons living in the region, including those residing in Harrison County (and therefore residing in the Marshall Division), undoubtedly have an interest in the disposition of a case involving Longview Regional." (*Id.*). Plaintiffs further note that Longview Regional "is located approximately 1.7 miles from the Harrison County border," meaning that "residents [of Harrison county] are likely to be aware of, use[,] and even rely on the healthcare services of this nearby facility." (*Id.* at 3).

The Court finds that this factor is neutral in the transfer analysis. The question here is simple: in assessing the local interest in this suit, is the Court to look to form (artificial divisional lines) or function (the on-the-ground reality)? The Court concludes that function should govern over form. The relevant events/entities that form the basis of this suit undisputedly occurred/reside in Longview, Texas. *See* (Dkt. No. 13 at 2 ("The facts and Plaintiffs' response make clear that the events relevant to this action occurred in Longview, Texas[.]")); (Dkt. No. 11 at 6-7). It is also

---

[2] No. 2:13-CV-00185-JRG, 2013 WL 4811227 (E.D. Tex. Sept. 9, 2013).

undisputed that those events occurred, and the entities reside, closer to the Marshall courthouse than the Tyler courthouse. *See* (Dkt. No. 11 at 6-7); (Dkt. No. 13 (not disputing Plaintiffs' representations regarding the relative distances). Defendant asks the Court to ignore these facts and instead view the world through the artifice of divisional lines drawn on a map. The Court declines Defendant's invitation for the reasons it has previously expressed in *Smtih v. Michels Corporation*:

> [T]he Court's duty in analyzing the *Gilbert* factors is not merely an exercise in determining the division in which the events occurred and the witnesses reside. Such a simplistic abstraction of the facts of each case obscures the realities of any actual inconveniences or lack thereof. Were it otherwise so, a suit wherein all of the events occurred and witnesses reside in Carthage, Texas, for example, would have to be transferred to the Tyler Division of the Eastern District of Texas. Yet a transfer to the Tyler Division would require these hypothetical parties and witnesses to travel 33 miles *further* to the United States Courthouse in the Tyler Division rather than in the Marshall Division. In other words, this hypothetical transfer would defeat the purpose of 28 U.S.C. § 1404(a).

No. 2:13-CV-00185-JRG, 2013 WL 4811227, at *4 (E.D. Tex. Sept. 9, 2013). Like the hypothetical scenario discussed in *Smith*, this Court is **closer** to the relevant events and parties than the courthouse in Tyler. The Court further notes that the prospective jurors most interested in the events of this lawsuit—the citizens who live in and around Longview and utilize LMRC's and Wellness Pointe's services—no doubt reside in both divisions. As such, the Court finds that this factor is neutral.

### C. Convenience of Willing Witnesses

Defendant largely repeats its arguments from the local interest factor—namely, that the "[t]he sources of proof, Plaintiffs[,] and a majority of the healthcare providers," are in Gregg County, Texas, "which is in the Tyler Division." (Dkt. No. 9 at 6). In addition to this argument, Defendant notes that "due to minor Plaintiff's medical conditions which Plaintiffs allege were

6

proximately caused by Defendants, minor Plaintiff received medical care from healthcare providers located in Fort Worth, Texas and Dallas, Texas." (*Id.*). As such, "[s]hould the healthcare providers located in Dallas and Fort Worth be needed at trial to opine on minor Plaintiff's medical conditions (then and present), the Tyler Division courthouse is clearly a more convenient location to travel to." (*Id.*).

In response, Plaintiffs argue that "[t]he geographic points for determining which division provides easier access to proof are the courthouses for the proposed transferor and transferee courts." (Dkt. No. 11 at 11). Accordingly, Plaintiffs contend, this factor should counsel against transfer because transfer "would have an inverse effect on the mileage traveled for the providers at Longview Regional Medical Center and the Wellness Pointe Longview/Pine Tree Main facility because . . . these facilities are further from the Tyler Division Courthouse than the Marshall Division Courthouse." (*Id.* at 12). Plaintiffs further contend that "[t]he relative convenience of these providers should take precedence [over unspecified providers of subsequent treatments in Dallas and Fort Worth], as the individuals who provided the care and treatment at issue, they are more likely to testify at trial than subsequent providers." (*Id.*).[3]

The Court finds that this factor is neutral in the transfer analysis. As discussed with respect to the local interest factor, the Court rejects Defendant's argument that the location of relevant witnesses in Longview (within the bounds of the Tyler Division) without relation to the involved courthouses resolves this issue in its favor. *See supra* § IV.B. No information has been provided by Defendant that any such witnesses reside closer to the Tyler courthouse than the Marshall

---

[3] Plaintiffs further note that Defendant "does not point to any specific evidence that would be relatively easier to access if this case were to be transferred to the Tyler Division," and that "[d]iscovery will also likely be conducted electronically, which will negate any hypothetical inconvenience arising from the transportation of documents." (*Id.* at 12). The Court notes that Defendant represented that the "Factor[] 1 (relative ease of access to sources of proof) . . . [is] neutral." (Dkt. No. 9 at 3). The Court identifies no dispute among the parties on this issue and concludes that the relative ease of access to sources of proof factor is neutral.

courthouse, or any indication that travel by these witnesses to the former would otherwise be more convenient than to the latter. As such, these witnesses who reside in and around Longview do not support transfer to the Tyler Division under this factor.

The only potential witnesses that Defendant identifies who reside closer to the Tyler courthouse are the "healthcare providers located in Dallas and Fort Worth . . . [who may] be needed at trial to opine on minor Plaintiff's medical conditions (then and present)." (Dkt. No. 9 at 6 (noting that these providers are roughly 50 miles closer to the Tyler courthouse than the Marshall courthouse)). While Plaintiffs are correct that Defendant does not "specifically identify any of these providers," the Court finds that Defendant has established the potential relevance of these providers such that they are properly considered in this Court's transfer analysis. However, Defendant provides no representation that these providers would be willing to attend trial. To the extent such witnesses are sought for trial testimony and willing, their travel to the Tyler courthouse would be about 50 miles shorter than the Marshall courthouse. Such a difference in distance, in this instance, would make trial in the Tyler Division only slightly more convenient for these potential witnesses.[4]

Having considered the potential witnesses identified by the parties (as opposed to actual, specific witnesses), and noting that trial in Marshall would be more convenient for some witnesses and trial in Tyler would be more convenient for others, the Court finds that this factor is neutral in the transfer analysis.

---

[4] Notably, neither division has the power of compulsory process over these providers. Presumably, most of their relevance would be medical records delivered electronically. Additionally, Fort Worth is 129 miles from Tyler and 182 miles from Marshall (Dallas is closer but similarly situated in relation to Tyler and Marshall). Any such witnesses potentially appearing in person would have a relatively similar journey to either courthouse under these facts. In any event, no party has identified any witnesses who would be required to appear at either location.

### D. The Administrative Difficulties Flowing from Court Congestion

Defendant contends that this factor weighs in favor of transfer because "transfer would not cause any administrative difficulties" and "would help ease court congestion." (Dkt. No. 9 at 7). Defendant argues that "[a]lthough all judges in the Eastern District of Texas are extremely hard-working, the Tyler Division carries fewer cases per judge and those cases are terminated, on average, more quickly than cases filed in the Marshall Division." (*Id.*). Specifically, Defendant identified that "from January 1, 2020 to January 18, 2024, there have been 2,292 cases pending before Chief Judge Gilstrap, 654 before Judge Barker, and 550 before Judge Kernodle," and that "[t]he median time to termination of cases during that period is respectively 279, 172[], and 198 days." (*Id.*).

In response, Plaintiffs argue that Defendant's "overall disposition time" comparison "lacks nuance and downplays this Court's experience in promptly resolving complex cases," which "is best exemplified by this Court's ability to efficiently dispose of intellectual property cases which, like medical malpractice cases, can involve extremely complex legal and factual issues." (Dkt. No. 11 at 10). Specifically, Plaintiffs note that "[t]he presiding judge of this Court has resolved more than 8,000 of these cases and done so at a very efficient rate, as the median disposition time of these cases is only 166 days, which is comparatively quicker than the overall disposition rates for Judges Barker and Kernodle of the Tyler Division in similar cases." (*Id.* (citing Dkt. Nos. 11-8, 11-9, 11-10)). In conclusion, Plaintiffs contend that "[t]his Court's demonstrated proficiency at resolving complicated cases in a prompt and efficient manner undermines any notion that maintaining venue of this action in the Marshall Division would contribute to court congestion." (*Id.*).

In reply, Defendant notes that "[t]he judges in the Marshall Division's abilities to resolve complex cases are not in dispute—their track records speak for themselves," but Defendant contends that "it is apparent the Tyler Division judges currently carry fewer cases" and "transferring this case to the Tyler Division . . . could help address the disproportionate case load currently borne by the Marshall Division." (Dkt. No. 13 at 2).

In sur-reply, Plaintiffs contend that Defendant "fail[s] to acknowledge the key aspect of Plaintiffs' response . . ., which is that the presiding judge of the Marshall Division has a faster median case disposition rate for complex intellectual property cases than the Tyler Division judges." (Dkt. No. 14 at 3). Plaintiffs thus conclude that "[c]onsidering that this medical-malpractice case resembles such cases, in that it also involves complex issues of fact and law, this Court's demonstrated efficiency in deciding complex intellectual property cases is a critical factor to be considered when evaluating the impact of any purported court congestion." (*Id.*).

The Court finds that this factor is neutral in the transfer analysis. Defendant cites to overall case disposition statistics showing that median time to termination of cases is slightly quicker before the judges in the Tyler Division than this Court (279 days (Gilstrap) vs 172 days (Barker) and 198 days (Kernodle)); meanwhile, Plaintiffs cite case disposition statistics specifically for intellectual property cases—which Plaintiffs explain better parallel the complexity of the present dispute—showing that this Court has a slightly faster median time to termination than the judges in the Tyler Division (166 days (Gilstrap) vs 174 days (Barker) and 258 days (Kernodle)). Based on the conflicting statistics provided by the parties, and the relatively small difference in time to termination between this Court and the judges of the Tyler Division (regardless of the specific

metric used), the Court finds that neither party has shown that this factor favors their side. Accordingly, the Court finds that this factor is neutral in the transfer analysis.

## V. CONCLUSION

In view of the foregoing factors, the Court must determine whether the Tyler Division is "clearly more convenient" than the Marshall Division. The Fifth Circuit has been careful to emphasize that district courts should not merely engage in a "raw counting" exercise which tallies up the factors favoring transfer and the factors militating against transfer. *In re Radmax*, 720 F.3d 285, 290 n.8 ("We do not suggest—nor has this court held—that a raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting 'score,' is the proper methodology."). Instead, the Court must make factual determinations to ascertain the degree of actual convenience, if any, and whether such rises to the level of "clearly more convenient." *See id.* Where the present and proposed forums are both roughly similar in terms of convenience, courts should not conclude that the proposed transferee forum is "clearly more convenient." *Volkswagen II*, 545 F.3d at 315. While this Court does not hold that "clearly more convenient" is equal to "clear and convincing," a movant must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning. *See id.* When carefully applying the convenience factors and the related factual arguments in each unique case, courts should be careful not to lose sight of the plaintiff's choice of forum and its historical significance in our jurisprudence. *Id.* ("[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected.").

Having found that all eight factors weigh neutrally, the Court concludes that the Tyler Division is not a "clearly more convenient" forum for this dispute. In conclusion, considering the

11

weight of the specific factors and facts of this case, the Court is of the opinion that Defendant's Motion (Dkt. No. 9) should be and hereby is **DENIED**.

**So ORDERED and SIGNED this 9th day of July, 2024.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE